IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEHM OIL COMPANY and GOLDEN OIL COMPANY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| TEXACO, INC., TEXACO REFINING AND MARKETING (EAST), INC. doing business as STAR ENTERPRISE-PARTNERSHIP, STAR ENTERPRISE PARTNERSHIP, CHEVRON CORPORATION, CHEVRONTEXACO CORPORATION, CHEVRON PRODUCTS COMPANY, CHEVRON USA INC., MOTIVA ENTERPRISES, LLC and SFM ENERGY, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) 2:06-cv-785 |
| Defendants. | ) ) |

### MEMORANDUM OPINION AND ORDER

Before the Court for consideration are a MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION filed by Chevron Corporation and ChevronTexaco Corporation (collectively "Chevron Corporation") (*Document No. 20*), and a MOTION FOR SUMMARY JUDGMENT filed by Texaco, Inc., Texaco Refining and Marketing (East), Inc. ("TRMI"), Star Enterprise ("Star") and Chevron USA Inc. ("Chevron USA")[1] (collectively the "Remaining Defendants"). Plaintiffs have filed responses to each motion and they are now ripe for disposition. The motions will be granted.

Standard of Review

When considering a motion to dismiss, the court accepts as true all well pleaded allegations of fact. *See Albright v. Oliver,* 510 U.S. 266, 267 (1994). In addition, the court construes all reasonable inferences from those allegations in a light most favorable to the

---

[1]Chevron USA's motion is also filed on behalf of its unincorporated division "Chevron Products Company," which is also named as a Defendant.

plaintiff. The complaint will be dismissed only if there is "no set of facts" which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint need only offer "a short and plain statement of the claim showing that the pleader is entitled to relief" enough to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See* Fed.R.Civ.P. 8(a)(2); *see also Conley*, 355 U.S. at 47. This is a minimum notice pleading standard "which relies on liberal discovery rules and summary judgment motions to ... dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513-14 (2002). Claims lacking merit may be dealt with through summary judgment pursuant to Rule 56. *Id.*

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

Procedural History

Plaintiffs seek injunctive relief or a declaration that Plaintiffs be permitted to continue their status as Texaco dealers in Western Pennsylvania. The Court conducted a hearing on

Plaintiffs' motion for a temporary restraining order (TRO) on June 28, 2006. A Memorandum Opinion and Order was issued on June 30, 2006, which denied the motion for TRO. On November 9, 2006, the Court issued a Memorandum Opinion and Order which granted motions to dismiss filed by SFM Energy, LLC ("SFM"), and Motiva Enterprises, LLC ("Motiva"), deferred ruling on Chevron's motion to dismiss, and gave Plaintiffs an opportunity to amend their complaint to address the reasons for dismissal.

The Second Amended Complaint that is the subject of the instant motions was filed on November 21, 2006 and asserts claims for money damages and declaratory relief under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 *et seq.*, as well as common law claims for breach of contract, promissory estoppel, civil conspiracy, and interference with contract and prospective contract. Plaintiffs subsequently filed Notices of Voluntary Dismissal as to SFM and Motiva. Chevron renewed its challenge to the exercise of personal jurisdiction. The Remaining Defendants' summary judgment motion remained pending, as Plaintiffs' response was not due until December 13, 2006 and the amendment to the complaint did not affect the substance of their arguments.

## Discussion

A.   Chevron Corporation's Motion to Dismiss for Lack of Personal Jurisdiction

The Court extensively analyzed Chevron Corporation's motion in its Memorandum Opinion and Order dated November 9, 2006, even though it ultimately deferred ruling on the motion. That discussion and analysis is incorporated by reference. In summary, the Court evaluates the existence of personal jurisdiction under the Pennsylvania long-arm statute, which authorizes jurisdiction to the fullest extent permitted under the United States Constitution. 42 Pa. C.S. § 5322(b). Thus, the Court must determine whether the exercise of personal jurisdiction over Chevron would violate due process. The "general jurisdiction" test requires an evaluation of whether defendant has such continuous and systematic contacts with Pennsylvania that

jurisdiction is proper regardless of the subject matter of the lawsuit. *Pennzoil Products Co. v. Colelli & Assoc.*, 149 F.3d 197, 200 (3d Cir. 1998). The "specific jurisdiction" test requires an evaluation of whether the current lawsuit arose out of a defendant's specific activity that was purposefully directed at Pennsylvania, including an examination of "minimum contacts" to determine whether the defendant could reasonably anticipate being haled into the state forum and an evaluation of whether the exercise of jurisdiction would comport with traditional notions of fair play and justice. *Id.*

Plaintiffs' primary argument is that Texaco's contacts with Pennsylvania, and/or those of other subsidiaries, may be attributed to Chevron Corporation. Chevron Corporation concedes that it merged with Texaco in October 2001, subsequently changed its name to ChevronTexaco Corporation, and in May 2005, changed its name again to Chevron Corporation. Chevron Corporation is the parent corporation of the Remaining Defendants. It is uncontested that Chevron Corporation is one of the largest multinational corporations in the world.

The general rule is that mere ownership of a subsidiary does not automatically subject the parent corporation to personal jurisdiction in the states where the subsidiary has contacts. *Blackwell v. Marina Assoc.*, 2006 WL 573793 *5 n.4 (E.D. Pa. 2006). In *Blackwell*, the Court recently outlined the relevant inquiry:

> The Court of Appeals has set forth numerous factors to be considered in determining whether a court may impute the jurisdictional contacts of a subsidiary to its parent corporation: (1) whether the subsidiary corporation played a part in the transactions at issue; (2) whether the subsidiary was merely the alter ego or agent of the parent; and (3) whether the independence of the separate corporate entities was disregarded. *Lucas*, 666 F.2d at 806. This Court has added another factor: (4) "whether the subsidiary is necessarily performing activities that the parent would otherwise have to perform in the absence of the subsidiary." *Arch v. Am. Tobacco Co., Inc.*, 984 F. Supp. 830, 837 (E.D. Pa.1997).

In its Order of November 9, 2006, this Court expressed skepticism that Plaintiffs will be able to meet their burden to demonstrate a direct basis for the exercise of specific jurisdiction over Chevron. The Court cited to another federal district court case which addressed precisely the same issues, *IMC Exploration Co. v. Texaco Inc.*, 2005 WL 161178 (E.D. La. 2005) (concluding

that court could not exercise personal jurisdiction over Chevron in Louisiana based on Texaco's contacts), but permitted sixty days for jurisdictional discovery. Plaintiff has filed a SUPPLEMENT TO BRIEF ADDRESSING CHEVRON CORPORATION'S MOTION TO DISMISS (Document No. 62) with exhibits (Document No. 63). Chevron Corporation has filed a RESPONSE TO PLAINTIFFS' SUPPLEMENT TO JURISDICTIONAL BRIEFING (Document No. 64).

The focus of Plaintiffs' supplemental brief is Chevron's website, Chevron.com. The website contains numerous references to the extensive and world-wide services, products and activities undertaken by the Chevron corporate family, including Texaco. Plaintiffs contend, in essence, that Chevron is so big that it must be subject to jurisdiction in Pennsylvania and that the statements on the website should be attributed to Chevron Corporation for the purpose of jurisdiction. However, the Court concludes that personal jurisdiction over Chevron Corporation is not triggered, for two distinct reasons. First, there is no basis to overlook the corporate separateness between Chevron Corporation and its subsidiaries. *See Lumax Indus., Inc. v. Aultman*, 669 A.2d 893 (Pa. 1995) (listing factors for disregarding corporate structure). Chevron has submitted unrebutted evidence that its subsidiaries operate as separate and independent entities with distinct boards of directors and officers.[2] Second, a website alone does not trigger jurisdiction and Chevron.com would fall toward the passive or informational end of the sliding scale that does not trigger personal jurisdiction as opposed to being an interactive site designed to solicit and conduct business with online users. *S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*, 79 F. Supp.2d 537, 539-40 (E.D. Pa. 1999). The mere fact that James Barnes had a "Chevron.com" email address does not result in his actions being attributable to Chevron Corporation insofar as the record is clear that Barnes was an employee of Chevron Products

---

[2]Indeed, boilerplate in Chevron's website Privacy and Terms of Use Statement specifically disclaims that terms such as "we" and "our" "are not intended as a precise designation of any of the separate companies, each of which manages its own affairs."

Company, a division of Chevron USA.[3]  Accordingly, the MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION filed by Chevron Corporation and ChevronTexaco Corporation (collectively "Chevron Corporation") (*Document No. 20*) will be granted.

B.     The Remaining Defendants' Motion for Summary Judgment

The Remaining Defendants contend that summary judgment should be granted for several reasons.  First, they contend that the PMPA expressly preempts all state law claims.  Second, they contend that the PMPA claims are barred by the applicable one-year statute of limitations.  Third, they argue that the PMPA claims fail because there is no "franchise relationship" between Plaintiffs and the Remaining Defendants.

    1.     PMPA Preemption of State Law Claims

The PMPA expressly provides, at 15 U.S.C. § 2806(a)(2): "No State or political subdivision of a State may adopt, enforce, or continue in effect any provision of law (including a regulation) that requires a payment for the goodwill of a franchisee on the termination of a franchise or nonrenewal of a franchise relationship authorized by this subchapter."  Numerous cases have concluded that Section 2806(a) creates an express preemption of state law claims relating to termination or non-renewal of a petroleum franchise.  In *Siecko v. Amerada Hess Co.*, 569 F. Supp. 768, 772-73 (E.D. Pa. 1983), the Court held that PMPA preempted claims under Pennsylvania common law.  Similarly, in *Camina Servs., Inc. v. Shell Oil Co.*, 816 F. Supp. 1533 (S.D. Fla. 1992), the Court held that PMPA preempted claims based on promissory estoppel, misrepresentation, fraud and tortious interference theories.

    Plaintiffs do not challenge the applicability of the numerous cases cited by the Remaining Defendants.  Nor do Plaintiffs contest that their state law claims are intertwined with and related

---

[3]Chevron also effectively articulates numerous reasons why Barnes' emails fail to demonstrate the type of "purposeful availment" needed to assert jurisdiction.  *See Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 451-52 (3d Cir. 2003).  Indeed, the gravamen of Plaintiffs' complaint is that Defendants are *refusing* to do business in the forum state.

to the termination/non-renewal of their petroleum franchise. *See* Second Amended Complaint. Instead, Plaintiffs contend that PMPA preemption would not take effect until and unless Plaintiffs were determined to survive summary judgment on its PMPA claims. The Court does not agree. The question of preemption does not go to the merits of a claim, but rather addresses whether federal or state law provides the rule of decision. In PMPA, Congress has clearly and expressly stated that the rights and obligations of the parties to a petroleum franchise agreement shall be determined by federal law. Therefore, the issue is not unduly complicated and discovery is not necessary. All state causes of action, whether they confer greater or lesser rights to franchisees, are preempted. Accordingly, summary judgment will be granted to the Remaining Defendants on Counts III-VI of Plaintiffs' Second Amended Complaint.

    2.    PMPA's Statute of Limitations

The PMPA contains a one-year statute of limitations. No action regarding the non-renewal or termination of a franchise may be maintained unless it is commenced within one year of the termination or non-renewal. 15 U.S.C. § 2805(a)(1). The Remaining Defendants contend that all of Plaintiffs' claims against them are time-barred.

Plaintiffs were parties to a series of "Marketer Agreement for Motor Fuels" contracts with various defendant entities over time. The agreement with Texaco expired, by its terms, on December 13, 1987. The agreement with TRMI expired, by its terms, on June 30, 1990. Plaintiffs' agreements with Star, by their terms, were to run from July 1, 1998 to June 30, 2003. Exhibits B-4, B-5. On September 22, 1998, Star assigned the contracts with Plaintiffs to Motiva, in accordance with Paragraph 23(D), which provides that Star may "freely assign" the agreement. Star's Notice of the assignment stated that "Motiva shall be substituted for Star with respect to the rights and obligations of Star under these agreements." Exhibits B-6, B-7.

On February 4, 2002, Motiva notified Plaintiffs that as a result of Chevron's acquisition of Texaco in October 2001, Motiva's license to use Texaco trademarks would end on June 30,

2006. Motiva then stated that it "terminates the Agreement, and the franchise relationship created thereby, effective June 30, 2006 ('Effective Date'), on which date the instrument and the franchise relationship thereunder will end." Exhibits B-10, B-11. The February 4, 2002 letters explicitly referred to the termination/non-renewal of the franchise in accordance with the PMPA and attached to each letter was a PMPA Summary Statement prepared by the Department of Energy. The February 4, 2002 letters then explained that since Plaintiffs' current agreement would expire by its terms prior to June 2006, "Motiva hereby extends the Agreement to and including the Effective Date. . . ." *Id.* The instant lawsuit was filed on June 14, 2006.

As the foregoing chronology demonstrates, the Plaintiffs' claims against all Remaining Defendants are untimely. Texaco and TRMI have had no contractual agreement or franchise relationship with Plaintiffs for over fifteen years. The last act taken by Star regarding the Plaintiffs was the assignment to Motiva in September 1998. Plaintiffs had actual notice that their franchise relationship with Star had ended. Even if the Court were to assume, arguendo, that the franchise relationship between Plaintiffs and Star remained in effect throughout the full term of their agreement, that contract expired by its terms in June 2003. Motiva acted unilaterally in extending the franchise agreement through June 2006. Thus, any PMPA claims by Plaintiffs against Star must have been filed, at the latest, by June 2004.

Plaintiffs contend, in essence, that their complaint is timely because the limitations period never began to run. Plaintiffs argue that because their agreement with Star was never non-renewed, under the PMPA it is presumed to renew for another five-year term. Plaintiffs cite *Wirkkula v. Union Oil Co. of California*, 780 P.2d 223, 225-26 (Or. App. 1989). However, *Wirkkula* is not controlling in this case, for two reasons. First, the contract at issue in *Wirkkula* provided that the tenancy would automatically renew, unless properly terminated. Plaintiffs' contracts, by contrast, state that they will expire. Second, in this case Motiva gave explicit and specific notice in February 2002 that Plaintiffs' franchise would be terminated. Exhibits B-10, B-11. The February 4, 2002 letters complied with all applicable PMPA requirements and

nonrenewal was based on a valid reason, namely, Motiva's loss of the right to grant use of the Texaco trademark. 15 U.S.C. §§ 2804, 2802(c)(6). Accordingly, Plaintiffs had actual notice for over four years that their franchise would not be renewed, which is far more than the 90 days required under PMPA.

In summary, Plaintiffs PMPA claims against the Remaining Defendants are barred by the statute of limitations. Plaintiffs' relationships with Texaco and TRMI ended long ago and the limitations period against Star ran, at the latest, by June 2004.

### 3. The Existence of a Franchise Relationship

Plaintiffs assert that they have had an uninterrupted 45-year relationship with the Texaco brand. They argue that this "franchise relationship" with "Texaco" is independent of a franchise contract and is apparently not limited to a specific corporate entity. Plaintiffs contend that the "franchise relationship" was not terminated by the loss of Motiva's right to the Texaco trademark. Because the Court has already determined that the PMPA preempts state law claims, and that Plaintiffs' PMPA claims are untimely, it is not necessary to address this argument. However, even if the PMPA claims were timely, the Court concludes that said PMPA claims would not be meritorious.

In order to argue that the franchise relationship was never properly terminated, Plaintiffs must necessarily contest the 1998 assignment from Star to Motiva. However, Plaintiffs do not identify any flaw or illegality in that assignment. The parties' agreement explicitly states that Star may "freely assign" the contract, without Plaintiffs' permission or participation. The record establishes that the agreement was assigned and that Plaintiffs were notified of the assignment. *See, e.g.* Exhibits B-6, B-7. Moreover, Plaintiffs did not object, but instead entered into several subsequent transactions with Motiva in carrying on the franchise relationship for the next eight years. Indeed, Motiva extended the franchise agreement from 2003 to 2006. As noted above,

9

although "Texaco" may not have terminated the franchise, "Texaco" (actually, Star) assigned the agreement to Motiva, and Motiva properly terminated the agreement and the franchise relationship.  The interactions between Plaintiffs and representatives of "Texaco" between 2004-2006 were not a continuation of an existing relationship, but rather, appear to have been exploratory negotiations regarding the possibility of entering into a new franchise relationship.

The cases upon which Plaintiffs rely, *Barnes v. Gulf Oil Corp.*, 795 F.2d 358 (4th Cir. 1986) ("Barnes I"), and 824 F.2d 300 (4th Cir. 1987) ("Barnes II"), are distinguishable in several important respects.  The issue in *Barnes* was whether an assignment without notice, that had the effect of increasing the retailer's cost of gasoline, was valid.  In *Barnes I*, the Court held that a motion to dismiss could not be granted where Barnes contended that the assignment was barred by a Virginia state law.  *Barnes II* addressed injunctive relief under the PMPA to prevent termination.  In the instant case, Plaintiffs have pointed to no law barring assignment, Plaintiffs never objected to the assignment, and the terms of the agreement did not change.  There is no evidence that "Texaco" was attempting to circumvent its responsibilities under the PMPA by assigning its interest to an underfunded entity, as was the situation in *Barnes*.  Moreover, Plaintiffs may not now contend that the assignment to Motiva in 1998 was invalid under the PMPA because the statute of limitations has long since run.

In summary, the Remaining Defendants are entitled to summary judgment on all counts.  The PMPA preempts state law claims and Plaintiffs' claims under the PMPA are untimely and barred by the statute of limitations.  As there remain no viable claims, the case will be closed.

An appropriate order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEHM OIL COMPANY and GOLDEN OIL COMPANY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| TEXACO, INC., TEXACO REFINING AND MARKETING (EAST), INC. doing business as STAR ENTERPRISE-PARTNERSHIP, STAR ENTERPRISE PARTNERSHIP, CHEVRON CORPORATION, CHEVRONTEXACO CORPORATION, CHEVRON PRODUCTS COMPANY, CHEVRON USA INC., MOTIVA ENTERPRISES, LLC and SFM ENERGY, LLC, | ) ) ) **2:06-cv-785** ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## ORDER OF COURT

AND NOW, this 26th day of February, 2007, in accordance with the foregoing Memorandum Opinion it is hereby ORDERED, ADJUDGED AND DECREED that the MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION filed by Chevron Corporation and ChevronTexaco Corporation (collectively "Chevron Corporation") (*Document No. 20*), and the MOTION FOR SUMMARY JUDGMENT filed by Texaco, Inc., Texaco Refining and Marketing (East), Inc. ("TRMI"), Star Enterprise ("Star") and Chevron USA Inc. ("Chevron USA") are **GRANTED.**  This case will be docketed as closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Ansley S. Westbrook II, Esquire
Email: awestbrook@rlmlawfirm.com

Dennis St. John Mulvihill, Esquire
Email: dmulvihill@rlmlawfirm.com

Thomas J. Farnan, Esquire
Email: tfarnan@rlmlawfirm.com

Eric L. Horne, Esquire
Email: ehorne@eckertseamans.com

Matthew E. Coveler, Esquire/**VIA REGULAR U.S. MAIL AND FAX: 713/ 425-7373**
Samuel Stubbs, Esquire
Pillsbury Winthrop Shaw Pittman, LLP
2 Houston Center, 909 Fannin, Suite 2200
Houston, TX 77010

Rosemary C. Crawford, Esquire
Email: crawfordmcdonald@aol.com

David M. Rodi, Esquire/**VIA REGULAR U.S. MAIL AND FAX: 713/ 229-7839 or 713/ 229-1522**
Baker Botts, LLP
910 Louisiana Street
Houston, TX 77002